# United States District Court

## For The District of Columbia

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| V. | AMENDED |
| **GLORIA GONZALEZ PAZ** | |
| DOB: X/X/1973 | CASE NUMBER: 08-012-M-01 |

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about November 30, 2006, through December 6, 2007, in the District of Columbia, and elsewhere the defendant did, (Track Statutory Language of Offense)

knowing conspire to transfer an identification document, authentication feature, or false identification document knowing that such document or feature was stolen or produced without lawful authority.

in violation of Title __18__ United States Code, Section(s) 1028(a)(2) and (f).

I further state that I am Sean T. Ryan, Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

AUSA, Susan B. Menzer   (202) 514-6968
Sworn to before me and subscribed in my presence,

Signature of Complainant
Sean T. Ryan, Special Agent
Federal Bureau of Investigation

_____    at    Washington, D.C.
Date                                          City and State

_____        _____
Name & Title of Judicial Officer             Signature of Judicial Officer

# AMENDED

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, SEAN T. RYAN (hereinafter "affiant"), a Special Agent with the Federal Bureau of Investigation (hereinafter "FBI"), having been duly sworn, hereby depose and state as follows:

A. OBJECTIVE

1. Based on the facts set forth in this affidavit, your affiant submits that there is probable cause to believe that Gloria Gonzalez Paz and Dora Romero Morales conspired with others to knowingly transfer a false identification document, to wit, a District of Columbia driver's license, knowing that such driver's license was produced without lawful authority, in violation of 18 U.S.C. Section 1028(a)(2)and(f).

B. CREDENTIALS

1. Affiant is a FBI Special Agent assigned to the Public Corruption Squad of the Washington, D.C., Field Office. Affiant has been a FBI Special Agent for approximately four years. My duties include, but are not limited to, the investigation of alleged violations of Federal criminal statutes which involve corruption matters with public officials in the D.C. Metropolitan Area and the preparation, presentation and service of criminal complaints, arrest and search warrants. Affiant is a federal law enforcement officer under applicable provisions of the United States Code and under Rule 41(a) of the Federal Rules of Criminal Procedure.

C. SOURCE OF EVIDENCE

1. The facts set forth in this affidavit are based upon affiant's personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other

1

individuals including review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that the individuals named herein have violated the statutes set forth above in paragraph A.

    D.   RELEVANT STATUTE

    1.     Conspiracy To Transfer Identification Documents Produced Without Lawful Authority, 18 U.S.C. §§ 1028 (a)(2) and (f), provides, in relevant part:

    (a)     Whoever, in a circumstance described in subsection (c) of this section-

    (2)     knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;

shall be punished as provided in subsection (b) of this section.

    (d)     In this section and section 1028A --

    (1)     the term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified;

(3) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, . . . ;

(4) the term "false identification document" means a document made of a type intended or commonly accepted for the purposes of identification of individuals that –

(A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental agency but was subsequently altered for purposes of deceit; and

(B) appears to be issued by or under the authority of the United States Government, a State, . . . ;

(6) the term "issuing authority" --

(A) means any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features;

(7) the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including, any –

(A) name, social security number, date of birth, official State or government issued driver's license or identification number . . .

(9) the term "produce" includes alter, authenticate or assemble;

(11) the term "State" includes any State of the United States, the District of Columbia, . . . ;

(f) Attempt and conspiracy — Any person who attempts or conspires to commit any

offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

E.  FACTUAL BACKGROUND

1. Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months.  A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency.  The DMV has specifically limited the types of documentation it will accept.  For example, original birth certificates, unexpired passports or resident alien cards can prove an individual's identity (i.e. name and date of birth).  In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate.  The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

2. Applicants for driver's licenses must pass the following three tests: vision screening, knowledge and street sign recognition and skills road.  Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test.  Applicants who possess a valid driver's license from a foreign jurisdiction need not take the road test, but must successfully pass the eye screening and knowledge and street sign recognition tests.

3. On January 16, 2008, at approximately 12:00 p.m., Gloria Gonzalez Paz parked a Silver Nissan Quest Mini-Van, in the 3200 block of M Street, N.W.  Paz's fifteen year old daughter (hereinafter referred to as "Juvenile") was sitting in the front passenger seat beside her

mother. Shortly thereafter, a 1992 grey Toyota Corolla with Virginia tags parked directly in front of Paz's vehicle. Dora Romero Morales was in the front passenger seat. Juvenile and Morales exited their respective vehicles and entered the Georgetown Park Mall. They took an elevator to the lower level where the DMV is located. Juvenile appeared to speak to Dora Romero Morales and pointed to the DMV offices. Dora Romero Morales went into the DMV offices and approached, without waiting in line, window three where DMV employee, known as operator 1533, was sitting (hereinafter referred to as "DMV employee"). After Juvenile observed Dora Romero Morales and the DMV employee interacting, she took the elevator back to the street level and returned to her mother's vehicle.

4. In the meantime, Dora Romero Morales fraudulently obtained a D.C. driver's license from the DMV employee without completing the required application or passing the vision, knowledge or basic skills tests. Although Dora Romero Morales resides in the Commonwealth of Virginia, she provided the DMV employee with an address in the District of Columbia. It appeared that Dora Romero Morales was reading this address off a sheet of paper that she was holding in her hand. Dora Romero Morales also provided the DMV employee with information from a Virginia Identification card. The DMV employee, however, entered data into the DMV computer system, falsely asserting that Dora Romero Morales presented a valid Virginia driver's license. The Virginia Department of Motor Vehicles' records reflect that Dora Romero Morales did not possess a valid driver's license.

5. The address provided by Dora Romero Morales that appears on the fraudulently obtained license reflects the address of the woman who was driving the gray Toyota Corolla. The driver confirmed that Dora Romero Morales does not reside at this address. In fact, the

5

driver advised that Dora Romero Morales resides in Virginia. The driver also advised that she knew at the time she drove Dora Romero Morales to the Georgetown DMV that they were there for Dora Romero Morales to obtain a fraudulent D.C. driver's license.

 

SEAN T. RYAN
FBI Special Agent

Subscribed and sworn to before

me this _____ day of January, 2008.

THE HONORABLE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA